UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH WARD,<br><br>                        Plaintiff,<br><br>v.<br><br>E. PASCUAL,<br><br>                        Defendant. | Case No.: 3:23-cv-01423-BJC-AHG<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDMENT CLAIM FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**<br><br>**[ECF No. 33]** |

     Plaintiff Joseph Ward ("Plaintiff"), a state prisoner incarcerated at the R.J. Donovan Correctional Facility ("RJD") at the time of the events but who has since transferred to another correctional facility, is proceeding *pro se* with a civil rights complaint pursuant to 42 U.S.C. § 1983. ECF Nos. 9, 10. Plaintiff alleges Defendant E. Pascual ("Defendant") violated his rights under the First Amendment, Eighth Amendment, and Fourteenth Amendment by leaving Plaintiff's cell door open allowing another inmate to attack him

and failing to promptly administer medical care in retaliation for Plaintiff filing a complaint to the Warden. *Id.*

Before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 33. In his Motion, Defendant contends he is entitled to dismissal of Plaintiff's First Amendment claim because Plaintiff failed to exhaust available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). ECF No. 33-1 at 5–10; *see* 42 U.S.C. § 1997e(a). For the reasons set forth below, the Court **RECOMMENDS** the District Judge **GRANT** Defendant's motion to dismiss Plaintiff's First Amendment claim based on a failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Complaint on July 31, 2023, naming RJD Correctional Officers Pascual, Massaro, and Sosa as Defendants. ECF No. 1. On October 25, 2023, the Court granted Plaintiff leave to proceed *in forma pauperis*, conducted an initial screening of the Complaint, and denied Plaintiff's motion to appoint counsel. ECF No. 4. Plaintiff filed a First Amended Complaint on November 17, 2023, and before the Court screened the complaint, Plaintiff filed a Second Amended Complaint ("SAC") (January 8, 2024). ECF Nos. 7, 8.

On March 25, 2024, the Court screened the SAC and dismissed all claims against Massaro and Sosa. ECF No. 10 at 11. The Court found some of Plaintiff's claims against Pascual survived. *Id.* Specifically, the Court dismissed:

> [A]ll claims in Plaintiff's [SAC] against all Defendants without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) ***with the exception of*** the Eighth Amendment failure to protect claim, the First Amendment retaliation claim, and the Fourteenth Amendment Equal Protection claim against Defendant Pascual.

*Id.*

On May 10, 2024, Plaintiff filed a Third Amended Complaint ("TAC"), ECF No. 16, which the Court construed as a motion to amend. ECF No. 18 at 3. The Court denied

the motion to amend as futile and extended the time for Plaintiff to serve his operative SAC. ECF No. 18 at 3-4. After a period in which Plaintiff made various requests to the Court (e.g., waiver of service of summons and extension of time to serve), Defendant filed the instant Motion on November 20, 2024, seeking dismissal of Plaintiff's First Amendment claim *only*. ECF Nos. 21, 24, 33. The Court then issued notice to Plaintiff regarding Defendant's Motion to Dismiss based on a failure to exhaust administrative remedies. ECF No. 34. Plaintiff filed his Opposition to the Motion to Dismiss on December 9, 2024, and Defendant filed his Reply on January 7, 2025. ECF Nos. 35, 38.

## II.  PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that in June 2022, Defendant became extremely angry after Plaintiff did not return to his cell on time. ECF No. 9 at 3. Defendant told Plaintiff, "[L]ock it up, you sex offenders should be killed," to which Plaintiff responded, "[D]on't talk to me like that, I'm going to my cell, I haven't assaulted anybody. [Y]ou don't know the fact(s) of my case. I've never assaulted anyone like that. I'm filing a 602 and I'm writing the Warden, you're trying to get me hurt." *Id.* at 3-4. Plaintiff then heard Defendant tell building [inmate] porter(s) that Ward was a sex offender. *Id.* at 4. Subsequently, Plaintiff complained to the Warden that Defendant "subjected [] Plaintiff to an unsafe living condition by labeling [] Plaintiff a sex offender." *Id.* at 4. Shortly thereafter, Plaintiff requested and was approved for a housing unit change. *Id.* at 5. Plaintiff alleges he was housed with inmates prone to violence. *Id.*

Plaintiff further contends that on July 7, 2022, Defendant retaliated against him for complaining to the Warden by leaving Plaintiff's cell door open to allow another inmate to attack Plaintiff. *Id.* at 6, 20. Plaintiff alleges his cell door was the only door that Defendant deliberately left open. *Id.* at 10. Plaintiff claims he alerted Defendant to his cell door being left open, but to no avail. *Id.* at 7, 16. Subsequently, a fellow inmate, T. Kimari ("Kimari"), entered Plaintiff's cell and stabbed him multiple times in the throat and neck. *Id.* at 11; *see also* ECF No. 1-2 at 2-3 and ECF No. 33-2 at 5-6 (grievance form); ECF No. 1-2 at 13 (incident log).

     Plaintiff further alleges Defendant observed him bleeding for ten minutes before activating an emergency alarm and calling 911 to contact emergency triage personnel. ECF No. 9 at 7. Plaintiff was treated at an off-site facility. *Id.* at 8. RJD then notified Plaintiff that he would be rehoused in administrative segregation. *Id.*; *see also* ECF No. 1-3 at 2. The notice specified Plaintiff was a victim of "an attempted murder committed by inmate Kimari" from which Plaintiff "sustained life threatening injuries consisting of two puncture wounds to the neck area and one laceration to the arm area requiring outside hospital treatment." ECF No. 1-2 at 2.

     On July 20, 2022, Plaintiff submitted CDCR 602-1 Grievance No. # 282895 regarding the July 7 incident.[1] ECF No. 1-2 at 2-3; ECF No. 33-2 at 5-6. In the grievance, he wrote:

> On or about July 7, 2022 . . . my cell door [] was opened for pill call which usually is appox [sic] 2 mins, although not this day . . . almost 1 yr in never has it been open this long . . . [a] cell mate came in all the way, while [I laid] in bed this inmate [] hit me in the neck, stabbed me with a handmade knife . . . If the officer did his simple task [and] shut the door, he would have prevented this. Instead, [he] gave [an] inmate free opportunity to commit attempted murder . . . We are all human, [we] all make mistakes, even though this mistake almost cost me my life . . . [I'm] still not asking this officer to lose his job just asking for retraining. Financially don't have a set dollar amount, would like C.D.C.R. own up [to the] mistake and make offer. If we can't agree to a dollar amount, I will go to court [and] seek damages."

*Id.*

     Following an inquiry into the issue, the Office of Grievances ("OOG") notified Plaintiff that his claim was denied. ECF No. 1-2 at 4; ECF No. 33-2 at 7-8. The decision advised: "[I]f you are dissatisfied with this response you may appeal this decision by mailing the CDCR Form 602-2 included in this response to the CDCR Office of Appeals ("OOA"). *Id.*

     On October 4, 2022, Plaintiff submitted an appeal, which states in part:

---

[1] C.D.C.R. denotes the California Department of Corrections and Rehabilitation.

> I believe there is only one claim hear [sic], which is that a C.D.C.R. officer violated my 8th Amendment . . . If my door would be closed, I wouldn't have got hurt. Video evidence will show my cell door was left open by a C.D.C.R. tower [correctional officer]. I am not asking for this officer to be fired just re-train[ing] on doors [and] rules."

ECF No. 1-2 at 5-6; ECF No. 33-2 at 9-10.

On December 12, 2022, the OOA denied the claim. ECF No. 1-2 at 7; ECF No. 33-2 at 11. The denial noted:

> As stated in the [OOG's] response, during the course of the inquiry into your claim, it was identified that a possible violation of policy occurred; therefore, this claim was elevated and referred to the central repository for further review. You will be notified of the outcome [] outside the grievance process. Be advised, this claim should have been closed as 'Identified as Staff Misconduct' in the [system]. The claim was appropriately elevated for review, thus this claim is denied."

*Id.*

### III.   PLAINTIFF'S FIRST AMENDMENT CLAIM SHOULD BE DISMISSED

Defendant argues Plaintiff's First Amendment claim should be dismissed for failure to exhaust administrative remedies. ECF No. 33-1 at 5. Defendant further contends that because Plaintiff's failure to exhaust is clear from the face of the SAC, documents relied on in the complaint, and documents subject to judicial notice, it is appropriate for adjudication at the motion to dismiss stage, rather than at summary judgment. *Id.* at 5-6.

Defendant's primary argument is that Plaintiff's Grievance No. 282895 does not reference any retaliatory conduct by Defendant. *Id.* at 8. Defendant highlights that the grievance does not articulate that Defendant acted or failed to act due to Plaintiff's complaint to the Warden, and does not mention Defendant's purported labelling of Plaintiff as a sex offender. *Id.* Plaintiff's appeal of Grievance No. 282895 only references Plaintiff's Eighth Amendment claim and does not allege retaliation. *Id.* at 9. Defendant further

contends that because of this, RJD was not on notice of any retaliation against Plaintiff for exercising his First Amendment rights. *Id.*

In his Opposition, Plaintiff puts forth three arguments. First, he argues Defendant's conduct "does not advance a legitimate correctional goal," and thereby exempts Plaintiff from procedural requirements surrounding exhaustion. ECF No. 35 at 3. Second, Plaintiff asserts Defendant instilled such fear in Plaintiff that administrative remedies became unavailable (i.e., Defendant prohibited Plaintiff from engaging in the administrative grievance process vis-à-vis intimidation). *Id.* Plaintiff states:

> Ordinarily Plaintiff would be required to exhaust administrative remedies before filing suit with the courts, when they are available to [] Plaintiff. However, here in the instant case the Defendant facilitated a brutal attack against [] Plaintiff after [] Plaintiff filed a complaint, or wrote to the Warden's office complaining about the conduct of the Defendant while on duty. Defendant is therefore estopped from complaining that the Plaintiff failed to exhaust administrative remedies in this matter.

*Id.* at 5. Third, in the alternative, Plaintiff contends he exhausted his First Amendment claim by filing Grievance No. 418026.[2] ECF No. 18 at 3-4.

In his Reply, Defendant contends that instead of squarely addressing the exhaustion requirement, Plaintiff discusses the merits of a First Amendment claim by raising issues such as whether the purported conduct advances a legitimate correctional goal. ECF No. 38 at 2. Defendant argues Plaintiff's focus on the substance of a First Amendment claim "effectively concedes" his grievance failed to put RJD on notice of alleged retaliatory conduct. *Id.*

Defendant goes on to note that Grievance No. 418026—a second grievance pertaining to the July 2022 incident—includes "a single reference to retaliatory conduct," as follows: "It appears as if the conduct of floor staff and control booth staff was

---

[2] The Court notes Plaintiff included Grievance No. 418026 (corresponding to Appeal No. 432105) in his TAC, which is not the operative complaint. ECF No. 18 at 3-4. Nonetheless, in the discussion to follow, the Court will address Plaintiff's contention.

retaliatory." *Id.* at 3. Defendant argues such a "conclusory allegation[]" made no direct reference to prior complaints submitted by Plaintiff. *Id.* Defendant notes that like the initial grievance (No. 282895), Grievance No. 418026 addresses alleged conduct occurring *after* the July 2022 incident (i.e., failure to provide medical care). Defendant highlights that Grievance No. 418026 fails to mention Defendant allegedly labeled Plaintiff a sex offender or that Plaintiff filed a complaint with the Warden due to the purported label. *Id.* Consequently, RJD was not on notice of retaliatory conduct as required under RJD's regulations.

Further, Defendant contests Plaintiff's claim that administrative remedies were unavailable. Defendant argues Plaintiff has not pointed to "any actual threat or threatening action . . . that deterred [Plaintiff] from pursuing administrative remedies after the incident." *Id.* at 4-5. According to Defendant, Plaintiff's very participation in the grievance system contradicts his claim that he could not participate in the grievance system. *Id.* at 5.

### A.   Legal Standards

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). In determining whether a complaint meets this standard, the Court considers not only the "allegations contained in the pleadings," but also "exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The Court must "accept all well-pleaded factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff." *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1086 (9th Cir. 2020). The Court's obligation to accept alleged facts as true extends to "factual allegations in the exhibits attached to the complaint." *Flathead Irrigation Dist. v. Zinke*, 725 F. App'x 507, 509 (9th Cir. 2018) (citing *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.4 (9th Cir. 2014)). However, the Court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112,

1115 (9th Cir. 2014) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988.

Plaintiff is proceeding *pro se* in this action, requiring the Court to construe his pleadings liberally. "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotations and citation omitted). *See also Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (explaining that the Court has "an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt."). Further, even if the Court finds it appropriate to grant a motion to dismiss, the Court "should not dismiss a *pro se* complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotations and citation omitted).

Under the PLRA, inmates must exhaust "all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). Exhaustion "is a prerequisite to suit." *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010).

The California Code of Regulations details the two steps an inmate must complete to exhaust administrative remedies: (1) timely submit a Form 602-1 (the initial grievance) to the OOG, and (2) timely submit a Form 602-2 (the appeal) to the OOA. Cal. Code Regs. tit. 15, §§ 3480–3485 (2022); *see also Jones v. Bock*, 549 U.S. 199, 218 (2007). Importantly, the grievance must include enough factual specificity to put the prison on notice of the nature of the wrongdoing. *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010).

With respect to factual specificity, CDCR Regulations require that the claimant's grievance "describe all information known and available to the claimant regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the claimant's knowledge[.]" Cal. Code Regs. tit. 15, § 3482(c)(2) (2022). Where the grievance does not "provide enough information . . . to allow prison officials to take appropriate responsive measures," an inmate has not exhausted available administrative remedies. *Griffin v. Arpaio*, 557 F.3d 1117, 1121 (9th Cir. 2009) (quoting *Johnson v. Testman,* 380 F.3d 691, 697). Following an appeal, the inmate should receive a written decision from the OOA. *Id.* at § 3485. "Completion of the review process by the OOA resulting in a decision of 'denied,' 'granted,' . . . [or] 'identified as staff misconduct' . . . constitutes exhaustion of all administrative remedies available to a claimant." *Id.*

Failure to exhaust under the PLRA is "an affirmative defense that the defendant must plead and prove." *Albino*, 747 F.3d at 1176 (quoting *Jones*, 549 U.S. at 212). Where "a failure to exhaust is clear on the face of the complaint," a defendant may file a motion to dismiss under Rule 12(b)(6) rather than under a motion for summary judgment (the general procedural device for exhaustion matters under the PLRA). *Albino*, 747 F.3d at 1166, 1168; *see also Jones*, 549 U.S. at 215-16 (noting that where the face of the complaint establishes that an inmate did not satisfy requisite exhaustion procedures, a motion under Rule 12(b)(6) is appropriate). Under the PLRA, when an inmate fails to exhaust only some claims, the entire complaint need not be dismissed. *Id.* at 203.

If a defendant establishes an inmate did not exhaust available remedies, the burden then shifts to the inmate to establish "there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172; *see also Ross v. Blake*, 578 U.S. 632, 636 (2016) ("A prisoner need not exhaust remedies if they are not 'available.'"). Under *Ross,* three situations render administrative remedies effectively unavailable. *Id.* at 643. First, such remedies are unavailable when they "operate[] as a simple dead end—with officers unable

or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, an inmate need not comply with grievance procedures where the procedures are "so confusing that . . . no reasonable prisoner can use them." *Id.* at 644. Third, exhaustion is not required where officials employ "machination, misrepresentation, or intimidation" to prevent an inmate from utilizing the grievance system. *Id.*

Additionally, *McBride v. Lopez* set the Ninth Circuit's standard for determining whether an inmate is exempt from exhaustion due to fear of retaliation for reporting an incident. 807 F.3d 982, 987-88 (9th Cir. 2015). Under *McBride*, exhaustion is excused where an inmate establishes: (1) he subjectively believed prison officials would retaliate against him for filing a grievance, and (2) that such a belief was objectively reasonable. *Id.* Establishing the second element requires a finding that "a reasonable prisoner of ordinary firmness would have believed the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." *Id.* at 987. Of note, a "[h]ostile interaction, even when it includes a threat of violence, does not necessarily render the grievance system unavailable." *Id.* at 988 (internal quotations and citation omitted).

### B. Exhaustion of Administrative Remedies

#### i. Defendant Met His Burden of Demonstrating Failure to Exhaust

Taking together Plaintiff's SAC, exhibits attached to the SAC and original complaint, and matters properly subject to judicial notice,[3] the Court ascertains a failure

---

[3] The Court GRANTS Defendant's Request for Judicial Notice of Plaintiff's Grievance No. 282895, the institutional responses thereto, and a copy of the CDCR regulations in effect in July 2022. ECF No. 33-2. *See Oliver v. California,* No. 2:13-CV-1974 KJN P, 2016 WL 5404371, at *6 (E.D. Cal. Sept. 27, 2016) (where in ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."). Further, given Plaintiff's *pro se* status, the Court reviewed Plaintiff's SAC with reference to Plaintiff's exhibits as submitted in his original Complaint. *See Dennis v. Kernan*, No. 216CV0542JAMACP, 2020 WL 3442330, at *2 (E.D. Cal. Apr. 9, 2020); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (courts may review

to exhaust is clear from the face of the complaint. Grievance No. 282895 does not reference retaliation, retaliatory events, or that Plaintiff previously complained to the Warden about Defendant labelling Plaintiff a sex offender. ECF No. 1-2 at 2-3; ECF No. 33-2 at 5-6. The grievance is void of information alleging Defendant's actions (or lack thereof) were motivated by Plaintiff's complaint to the Warden. *Id.* As such, Plaintiff did not put RJD on notice of a retaliation claim. *See Walton v. Hixson*, No. CIV S-09-1246 GEB, 2011 WL 6002919, at *1 (E.D. Cal. Nov. 30, 2011) citing *Griffin,* 557 F.3d at 1120 ("A grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.").

Like Grievance No. 282895, Grievance No. 418026 also failed to put RJD on notice of alleged retaliatory conduct. ECF No. 16 at 35-38. As the Court noted, Plaintiff included Grievance No. 418026 in his TAC (ECF. No. 16), which is not the operative complaint at hand, given the District Judge construed Plaintiff's filing of a TAC as a motion to amend and denied the motion as futile. ECF No. 18 at 3. That said, even if Grievance No. 418026 was incorporated into the Court's analysis—for instance, as evidence submitted to support an opposition to a motion for summary judgment—the result would be the same. In Grievance No. 418026, Plaintiff focused on alleged violations that Defendant failed to provide him with medical care following the July 2022 stabbing incident, which was the same focus of Plaintiff's initial grievance (No. 282895). ECF No. 16 at 35-38. Though in Grievance No. 418026 Plaintiff includes a sentence regarding retaliation— "[i]t appears as if the conduct of floor staff and control booth staff was retaliatory"— Plaintiff made no reference to Defendant purportedly labelling Plaintiff a sex offender or reference to other

---

documents incorporated by reference into a plaintiff's complaint and may take judicial notice when ruling on a motions to dismiss); *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1176 (N.D. Cal. 2024) (where "a court may [] consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, without converting a motion to dismiss into a motion for summary judgment.").

11

details supporting an inference of retaliation. *Id.* at 3. Outside of that isolated mention of retaliation, Grievance No. 418026 does not contain any specific assertions of retaliatory conduct that would support a claim of exhaustion. *See Sprewell*, 266 F.3d at 988 ("conclusory allegations" or "unreasonable inferences" are insufficient to survive a motion to dismiss). Notably, given CDCR Regulations specifically call out an inmate's need when submitting a grievance to *"describe all information known and available to the claimant* regarding the claim," Plaintiff's grievance misses the mark by not disclosing his prior interaction with Defendant. *See* Cal. Code Regs. tit. 15, § 3482(c)(2) (2022).

Finally, in his opposition, Plaintiff raises the merits of a substantive First Amendment claim. ECF No. 35 at 3. Plaintiff highlights *Rhodes v. Robinson*, which lays out elements of a viable First Amendment retaliation claim within the prison context. 408 F.3d 559, 567-68 (9th Cir. 2005). However, given "exhaustion is a prerequisite to suit," discussion of the substantive merits of Plaintiff's First Amendment Claim would be premature at this point. *Rhodes*, 621 F.3d at 1005; *see also Albino*, 747 F.3d at 1170 (where "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim"). Thus, the Court does not find a basis to conclude that Plaintiff exhausted administrative remedies with respect to his First Amendment claim.

### ii. **Administrative Remedies Were Available**

Plaintiff does not establish that RJD's grievance procedures were unavailable. For instance, Plaintiff does not show that RJD's grievance process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643. In fact, Plaintiff acknowledged the seeming availability of the grievance process when he responded affirmatively to the following question: "Have you previously sought and exhausted all forms of available relief from the proper administrative officials regarding the acts alleged?" ECF No. 9 at 23; *see also Sapp*, 623 F.3d at 826 (noting "exhaustion might [] be excused where repeated rejections of an inmate's grievances at the screening stage give rise to a reasonable good faith belief that administrative remedies are effectively unavailable").

Plaintiff also does not establish that RJD followed an overly confusing or opaque administrative procedure. *Ross*, 578 U.S. at 643-44. Instead, Plaintiff's participation in both levels of the RJD grievance process shows otherwise. *See Sapp* 623 F.3d at 827 (internal quotations and citation omitted) (where "nothing [] suggests that the prison had created draconian procedural requirements that would trip [] up all but the most skillful prisoners").

Additionally, Plaintiff does not establish that RJD officials rendered the grievance process effectively unavailable vis-à-vis intimidation or other circumstances that would cause an inmate to fear retaliation. *Ross*, 578 U.S. at 644; *see also McBride*, 807 F.3d at 987. Even if Plaintiff subjectively believed Defendant would retaliate against him for filing a grievance, such a belief would not be objectively reasonable given Plaintiff points to no actual threat from Defendant that prevented him from filing a grievance and Defendant did not inform Plaintiff that he should not file a grievance. *See McBride*, 807 F.3d at 988; *see also Williams v. Paramo,* 775 F.3d 1182, 1192 (9th Cir. 2015) (where an inmate is exempt from exhaustion procedures when "prison officials inform the prisoner that he cannot file a grievance."). On the contrary, Plaintiff fully participated in the grievance process—from the initial grievance through the appeal. The instant case is distinguished easily from cases like *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 793 (9th Cir. 2018), where the Ninth Circuit held that fear of retaliation was reasonable because inmates were beaten, tased, threatened, and partially restricted from accessing grievance forms by guards who created a "gang-like culture that included intimidation and retaliation for filing grievances." *Id.* at 793. Plaintiff's allegations here amount to no more than "general and unsubstantiated fears about possible retaliation," which are insufficient to exempt an inmate from the exhaustion requirement.[4] *Id.* at 794; ECF No. 1-2 at 12.

---

[4] In his original Complaint, Plaintiff attaches a letter he wrote to the Office of Internal Affairs at California Men's Colony in which he states: "[M]aybe [Defendant] Pascual didn't plan the att[empted] murder on me. But he knows prison code, what to say, or to leave a cell door open in the tower control. He sees everything going on, it's his job." ECF No. 1-2 at 12.

Plaintiff's reliance on *Valandingham v. Bojorquez* is misplaced. ECF No. 35 at 5. There, the Ninth Circuit held that an inmate established the existence of a genuine issue of material fact as to whether his civil rights were violated when prison guards prohibited him from speaking with other inmates in the law library, threatened him from seeking legal recourse, and conspired to label him a "snitch." 866 F.2d 1135, 1136-38 (9th Cir. 1989). *Valandingham* did not address the issue of exhaustion. Similarly, Plaintiff cannot rely on *Crawford-El v. Britton*, because the Court there also did not address the issue of exhaustion, but rather focused on whether a plaintiff should be held to a clear and convincing burden of proof in unconstitutional-motive cases against a corrections officer. 523 U.S. 574, 578 (1998). Accordingly, Plaintiff has not met his burden. *See Draper v. Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016) (finding the district court properly dismissed the plaintiff's due process claim where he "did not identify any actions that prison staff took that impeded his ability to exhaust his administrative remedies, nor did he otherwise explain why he failed to comply with the administrative process").

## IV. CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Benjamin J. Cheeks pursuant to 28 U.S.C. § 636(b)(1). For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order:

(1) approving and adopting this Report and Recommendation; and

(2) **GRANTING** Defendant's Motion to Dismiss of Plaintiff's First Amendment claim without prejudice and without leave to amend (ECF No. 33).[5]

**IT IS ORDERED** that no later than **May 23, 2025**, any party to this action may file written objections and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal

---

[5] Under the PLRA, when an inmate fails to exhaust only some claims, the entire complaint need not be dismissed. *Jones*, 549 U.S. at 203.

1  of the Court's Order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez
2  v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).
3     **IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with
4  the Court and served on all parties no later than **May 30, 2025**.
5     **IT IS SO ORDERED.**
6  Dated:  May 9, 2025

```
                                    _____
                                    Honorable Allison H. Goddard
                                    United States Magistrate Judge
```